**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOE EDWIN ROGERS, JR.,

      Petitioner,

v.                                     Case No. 8:17-cv-2680-T-33SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## <u>ORDER</u>

Joe Edwin Rogers, Jr., a Florida inmate, timely filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) challenging his Hernando County convictions and a supporting memorandum of law (Doc. 2). Respondent filed a response (Doc. 9) and Rogers filed a reply (Doc. 15). In accordance with a previous Order of this Court (Doc. 17), Respondent filed a supplemental response (Doc. 20). Rogers did not reply to the supplemental response. Upon review, the petition will be DENIED.

### Procedural History

Rogers was convicted after a jury trial of 125 counts of possession of child pornography. (Doc. 10-2, Ex. A cont'd, doc. pp. 60-84; Doc. 10-3, Ex. A cont'd, doc. pp. 1-102). He was sentenced to an overall term of 75 years in prison, followed by 10 years of sex offender probation. (Doc. 10-4, Ex. A cont'd, doc. p. 2; Doc. 10-6, Ex. A cont'd, doc. pp. 1-4). The state appellate court affirmed the convictions and sentences in a written opinion. *Rogers v. State*, 96 So. 3d 922 (Fla. 5th DCA 2012). The state appellate court

dismissed Rogers's petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of Appellate Procedure 9.141(d). (Doc. 10-29, Exs. II, JJ).

Rogers also filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, and amendments to the motion. (Doc. 10-25, Ex. N, Doc. 10-26, Exs. N cont'd, P, Q). The state postconviction court summarily denied relief. (Doc. 10-26, Exs. O, R). The state appellate court affirmed in part and reversed in part. *Rogers v. State*, 162 So.3d 334 (Fla. 5th DCA 2015). On remand, the state postconviction court conducted an evidentiary hearing on several of Rogers's claims. It then entered a final order denying Rogers's motion. (Doc. 10-28, Ex. AA). The state appellate court *per curiam* affirmed the denial of relief. (Doc. 10-29, Ex. EE).

Rogers filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Doc. 10-29, Ex. MM). The state court denied the motion on the basis that Rogers's claim was not cognizable under Rule 3.800(a), and the state appellate court *per curiam* affirmed. (Doc. 10-29, Exs. NN, PP).

### Facts[1]

In 2007, Rogers and his then-girlfriend, Catherine Schlaegel, lived in Tennessee. They had a daughter together in 2007 but maintained separate residences. In May 2007, Rogers moved to Spring Hill, in Hernando County, Florida, to begin a new job. He took a limited amount of belongings with him. Schlaegel and their daughter moved in June 2007. At that time, a moving truck brought the rest of Schlaegel's and Rogers's belongings. They lived together in Spring Hill.

---

[1] This factual summary is based on the trial transcript and appellate briefs.

As Schlaegel was organizing the new house, she threw away adult pornography that she found. In July or August 2007, Schlaegel located an unmarked compact disk either in Rogers's laptop bag or in his closet. When she put the disk in her computer, she saw one image of child pornography. Schlaegel hid the disk in her closet. When she confronted Rogers, he said he did not know what she was talking about. But Rogers agreed to go to a therapist, and he and Schlaegel went to therapy together several times.

Schlaegel and Rogers moved to Citrus County in December 2007; they separated in approximately May 2008 and began living in separate residences. In April 2009, after Schlaegel attempted suicide, Rogers filed an emergency motion in state court to obtain custody of their daughter. Schlaegel contacted police, and provided them with the disk on May 1, 2009. A short time later, Schlaegel went to Rogers's home while wearing a recording device. Their recorded conversation was played at trial. In the conversation, Rogers stated that he had sometimes accidentally downloaded child pornography, but maintained that he believed he had deleted it all.

Detectives used a program called Forensic Tool Kit to analyze the disk provided by Schlaegel. The program recovered 178 images of child pornography. The State charged Rogers with 125 counts of possession of child pornography.

## Standard Of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless

the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of each claim for postconviction relief without discussion. These decisions warrant deference under § 2254(d)(1) because "the

summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## Exhaustion Of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). "If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

## Ineffective Assistance Of Counsel

Claims alleging ineffective assistance of counsel are analyzed under the test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court must consider whether, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Rogers must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To demonstrate prejudice, Rogers must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

## Discussion

<u>Ground One</u>

Schlaegel's testimony indicates that she viewed a limited number of images on the disk, and only one that she believed depicted child pornography. According to Detective Christopher Cornell's testimony, after the Forensic Tool Kit program analyzed data from the images on the disk, which numbered more than 20,000, he reviewed and isolated the images that he believed depicted child pornography. (Doc. 10-10, Ex. C cont'd, transcript pp. 275-77). Rogers asserts that police violated his Fourth Amendment rights in reviewing the entirety of the disk because this was a warrantless search that exceeded the scope of the search conducted by Catherine Schlaegel as a private individual. Accordingly, in Ground One, Rogers alleges that trial counsel was ineffective in not moving to suppress the disk on this basis.

This claim was presented to the state postconviction court in Rogers's postconviction motion. However, Respondent contends that the claim is unexhausted because Rogers failed to brief it with specificity on collateral appeal. *See Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary.") (quotation omitted).

As Respondent notes, Rogers did not expressly discuss or identify the ineffective assistance claim in his brief. Rather, he stated that "the trial court's January 24, 2014 order summarily denying Grounds 1, 2, 3, 5, and 6 of counsel's July 24, 2013, motion for post-conviction relief fails to conclusively refute those claims" and that the denial of those claims

should be reversed.  (Doc. 10-27, Ex. S, doc. p. 19).[2]  Despite Rogers's cursory briefing, this Court concludes that Rogers satisfied the exhaustion requirement.  It is apparent that the Fifth District Court of Appeal considered his claims because it reversed the postconviction court's denial of two subclaims, Grounds 1(a) and 1(d), which were only addressed as part of the generalized briefing quoted above.

This Court also concludes that the state appellate court adjudicated Rogers's ineffective assistance claim on the merits.  The opinion states, "We affirm, except as to claims I(a) and I(d) set forth in Rogers's initial [postconviction] motion.  We conclude that these claims are legally sufficient and not conclusively refuted by the record."  *Rogers*, 162 So.3d at 334 (footnote omitted).  To reach this determination, the state appellate court must have reviewed the merits of the claims presented in the underlying motion, and there is no reason to conclude that it only reviewed the merits of subclaims 1(a) and 1(d).  The state appellate court's affirmance in all other respects indicated that it denied on the merits all remaining claims and subclaims, even if not expressly addressed by the postconviction court.

Rogers has not shown that the denial of his ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts.  "To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of

---

[2] Rogers labeled his ground as claim 1(b) of his Rule 3.850 postconviction motion, but the trial court re-labeled it as claim 2.  However, Rogers addressed both claim 1, in its entirety, and claim 2 together in his collateral brief.

reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Rogers has not demonstrated that he had standing to bring a Fourth Amendment challenge to the police search because he does not show he had a reasonable expectation of privacy in the disk. "Fourth Amendment rights . . . are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)). *See also United States v. Gibson*, 708 F.3d 1256, 1276 (11th Cir. 2013) ("A defendant has standing to challenge a warrantless search if the defendant had a 'legitimate expectation of privacy' in the property when it was searched." (citing *Rakas*, 439 U.S. at 143)).

However, "Fourth Amendment claims do not lie when the defendant has abandoned the searched property." *United States v. Sparks*, 806 F.3d 1323, 1341 (11th Cir. 2015). "The critical inquiry when determining whether an abandonment has occurred is 'whether the person prejudiced . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question.'" *Id.* at 1342 (quoting *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994)). This inquiry involves considering the totality of the circumstances. *See id.* at 1344. "Whether abandonment occurred is a question of intent which may be inferred from acts, words and 'other objective facts.'" *United States v. Walker*, 199 Fed. App'x. 884, 886 (11th Cir. 2006) (citing *Ramos*, 12 F.3d at 1022-23). "Events that occurred after the abandonment can be considered as evidence of a

defendant's intent to abandon the property." *Id.* (citing *United States v. Winchester*, 916 F.2d 601, 604 (11th Cir. 1990)). Further, "[w]hether or not the facts reveal a complete abandonment in the strict property-right sense is not the issue . . . the Fourth Amendment is not to be applied in a hypertechnical manner but with a common sen[s]e approach." *United States v. Edwards*, 441 F.2d 749, 753 (5th Cir. 1971).

When Schlaegel took the disk and confronted Rogers about its content, he said that he did not know what she was talking about. (Doc. 10-8, Ex. C, transcript p. 190). Rogers told Schlaegel that she had the image, not him, and that it was hers, not his. (*Id.*). And although Rogers continued to inquire about the disk's location, the record does not show that Rogers demanded or expected the disk's return or claimed that it was still his between the time Schlaegel took it and the time she gave it to police nearly two years later.

A common sense assessment of these circumstances leads to the conclusion that Rogers "voluntarily relinquished his interest" in the disk to Schlaegel. *See Sparks*, 806 F.3d at 1341. As these circumstances indicate that Rogers abandoned the disk for Fourth Amendment purposes, and thus no longer had a reasonable expectation of privacy in the disk, he lacked standing to challenge the validity of the police search. *See Cooper*, 203 F.3d at 1284. Counsel is not ineffective for failing to bring a meritless claim. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Even if Rogers had Fourth Amendment standing to file a motion to suppress, he has not shown ineffective assistance because he has not demonstrated a reasonable probability that the motion would have been granted. "A search of property, without warrant or probable cause, is proper under the Fourth Amendment when preceded by valid

consent." *United States v. Dunkley*, 911 F.2d 522, 525 (11th Cir. 1990) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). The person giving voluntary consent "must have authority to do so" or "must reasonably appear to have the authority to do so." *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974) and *Illinois v. Rodriguez*, 497 U.S. 177 (1990)). Rogers has not shown that Schlaegel lacked the authority to consent to the search.

A third party has actual authority to consent to a search of property if she has "common authority over or other sufficient relationship to the . . . effects sought to be inspected." *Matlock*, 415 U.S. at 171. "A third party has apparent authority to consent to a search if an officer could have reasonably believed the third party had authority over the area searched." *United States v. Barber*, 777 F.3d 1303, 1305 (11th Cir. 2015) (citing *Rodriguez*, 497 U.S. at 188-89). *See also United States v. Garcia-Jaimes*, 484 F.3d 1311, 1323 (11th Cir. 2007), *vacated and remanded on other grounds by Moreno-Gonzalez v. United States*, 128 S.Ct. 2901 (2008) ("[E]ven if the consenting party does not in fact have the requisite relationship to the premises, if the officer has an objectively reasonable, though mistaken, good-faith belief that the consent was a valid consent, there is no Fourth Amendment violation.").

Rogers has not shown that Schlaegel lacked actual authority to consent to the search of the entire disk. As addressed, Rogers told Schlaegel that the disk and images were hers. Further, Schlaegel admitted that she kept the disk and that it was in her possession. (Doc. 10-9, Ex. C cont'd, transcript p. 228). Alternatively, Rogers fails to demonstrate that Schlaegel did not have apparent authority to consent. The record shows that police recovered the disk from Schlaegel directly, and that she told police about the

circumstances under which she obtained the disk and how she found the image when she put the disk in a computer. (*Id.*, transcript pp. 197-99; Doc. 10-10, Ex. C cont'd, transcript pp. 255, 333, 337). Accordingly, the police "could have reasonably believed" that Schlaegel had authority to consent to the search. *Barber*, 777 F.3d at 1305. Therefore, Rogers has not shown that a motion to suppress would have succeeded, as the police obtained valid consent before conducting the search. *See Bolender*, 16 F.3d at 1573.

Finally, even assuming that Rogers had Fourth Amendment standing and that Schlaegel's consent was invalid, Rogers cannot obtain federal habeas relief on his ineffective assistance claim because he fails to meet his burden under § 2254(d)(1), (2).

Rogers's claim relies on the private search doctrine. Under this doctrine, police cannot undertake a warrantless search of an item that "exceed[s] the scope" of a private individual's search. *United States v. Jacobsen*, 466 U.S. 109, 115-16 (1984). *Jacobsen*, which concerned a police search of a damaged box after Federal Express employees saw white powder in a package inside the box and alerted police, further explains:

> It is well-settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information. Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information: "This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in a third party will not be betrayed." *United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976). The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated. In such a case the authorities have not relied on what is in effect a private search, and therefore presumptively violate the Fourth Amendment if they act without a warrant.

*Id.* at 117 (footnotes omitted).

Rogers claims that because Schlaegel only viewed a limited number of images on the disk, police improperly exceeded the scope of that search when they reviewed the entire disk without a warrant. To show entitlement to federal habeas relief on the state court's denial of his ineffective assistance claim, Rogers must show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. "[C]learly established federal law" only encompasses holdings of the United States Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

Schlaegel began reviewing the disk, saw an image of child pornography, and later alerted police and told them about the disk's content. Rogers has not identified any clearly established federal law holding that when a private searcher views at least one image on a disk and tells police that the disk contains contraband, police exceed the scope of the private search by viewing other images on that same disk.[3] As Rogers does not cite any Supreme Court decision involving materially indistinguishable[4] facts in which the Supreme Court reached a decision different from the state court, or show that the state court reached the opposite conclusion as the Supreme Court did on a question of law, he has not demonstrated that the state court's decision was contrary to clearly established federal law.

---

[3] Other courts have concluded that police do not exceed the scope of a private search under similar circumstances. *See United States v. Runyan*, 275 F.3d 449, 464-65 (5th Cir. 2001) (police did not exceed the scope of a private search that had revealed child pornography on a disk by looking at more images on the disk)*; Rann v. Atchison*, 689 F.3d 832, 836-37 (7th Cir. 2012) (adopting *Runyan*'s holding and affirming the denial of a claim that counsel was ineffective in not moving to suppress images from a zip drive and camera memory card when police searched more files than the private searchers, who had informed police that those devices contained child pornography).

[4] *See Williams*, 529 U.S. at 412-13.

Nor has Rogers shown that the state court's decision involved an unreasonable application of clearly established federal law. Accordingly, he is not entitled to relief on Ground One.

Ground Two

Rogers contends that appellate counsel was ineffective in failing to argue that the jury returned non-unanimous verdicts. The Court finds that this claim is procedurally defaulted and is barred from federal habeas review.

Rogers raised this claim in his state habeas petition. (Doc. 10-29, Ex. II). The state appellate court dismissed the petition, stating only that it "ORDERED that the Petition for Ineffective Assistance of Counsel, filed June 15, 2016, is dismissed." (Doc. 10-29, Ex. JJ). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court has adjudicated the claim on the merits *in the absence of any indication or state-law procedural principles to the contrary.*" *Richter*, 562 U.S. at 99 (emphasis added). This presumption "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100.

Here, it is more likely that the state appellate court found Rogers's habeas petition untimely. Florida Rule of Appellate Procedure 9.141(d)(5) provides that, generally, a petition alleging ineffective assistance of appellate counsel "shall not be filed more than 2 years after the judgment and sentence become final on direct review." Rogers's judgment and sentence were affirmed on appeal on July 6, 2012, with the mandate issuing on September 28, 2012. (Doc. 10-25, Exs. L, M). His June 15, 2016 state habeas petition was clearly filed more than two years after the judgment and sentence became final.

Rule 9.141(d)(5) also provides that a movant can file a petition within four years of

the date the judgment and sentence become final on direct review if the petition "alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel." Rogers argued that this four-year period applied to him. But he only alleged that counsel misled him "with regard to the *expected* results of the appeal" by telling him that counsel had identified the "best issues," which led Rogers to believe "that he would be successful in overturning his conviction and sentences on direct review." (Doc. 10-29, Ex. II, doc. p. 32) (emphasis added). He did not argue, with a specific factual basis, that counsel affirmatively misled him about the results of the appeal. Therefore, an application of Rule 9.141(d)(5) leads to the conclusion that Rogers's petition was disposed of as untimely.[5] Further, Rogers asked the appellate court to reconsider the time limit in his motion for rehearing, which the court denied. (Doc. 10-29, Exs. KK, LL).

Other circumstances indicate that the state appellate court found the petition untimely. First, it was dismissed, not denied. *See, e.g., Cantu v. State*, 33 So.3d 145, 147 (Fla. 2d DCA 2010) ("The trial court's dismissal–rather than denial–of Cantu's motion to withdraw plea indicates that the trial court did not reach the merits of the motion."). And the petition's filing date was noted in the court's very brief dismissal order, signaling the date's importance to its decision. Finally, the court dismissed the petition less than two weeks after it was filed, without obtaining an answer from the State. This quick resolution supports the conclusion that the court did not reach the petition's merits.

In light of Florida law and the circumstances under which the state appellate court

_____

[5] Rogers filed his Rule 3.850 postconviction motion before he filed his state habeas petition, but the pendency of collateral postconviction relief proceedings does not toll the time period within which to file a state habeas petition alleging ineffective assistance of appellate counsel. *Forisso v. State*, 968 So.2d 677, 678 (Fla. 4th DCA 2007).

resolved Rogers's petition, this Court concludes that is more likely the state appellate court applied its established procedural bar, and did not adjudicate the claim on the merits. *See Richter*, 562 U.S. at 99-100. *See also Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("[W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of the case.").

The resolution of the claim on state procedural grounds results in a procedural default of Rogers's ineffective assistance of appellate counsel claim. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Accordingly, Rogers's claim cannot be considered unless he meets either the cause and prejudice or fundamental miscarriage of justice exception. *See id.*

Rogers relies on *Martinez v. Ryan*, 566 U.S. 1 (2012) in arguing that he meets the cause and prejudice exception. *Martinez* provides:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of *ineffective assistance at trial* if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 17 (emphasis added).

And the *Martinez* court stated that its holding "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise *a claim of ineffective assistance at trial*." *Id.* at 16 (emphasis added). Accordingly, *Martinez*'s language makes clear that *Martinez* does not apply to defaulted claims other than those alleging ineffective assistance of trial counsel. And the Supreme Court declined to extend the *Martinez* exception to defaulted claims of ineffective assistance of appellate counsel in *Davila v. Davis*, ___ U.S. ___, 137 S.Ct. 2058 (2017).

Therefore, Rogers cannot establish cause and prejudice under *Martinez* to excuse

the default of his ineffective assistance of appellate counsel claim. He does not argue or establish that the fundamental miscarriage of justice exception applies. Because Rogers does not overcome the procedural default, Ground Two is barred from review.

Ground Three

Rogers argues that the State's evidence was insufficient to establish the offenses, resulting in a federal due process violation. On direct appeal, Rogers argued that the trial court erred in denying his motion for judgment of acquittal, which challenged the sufficiency of the State's evidence. Rogers did not expressly raise a federal claim, but he asserted that "[t]he question on review becomes whether, 'after viewing the evidence in the light most favorable to the State, . . . a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." (Doc. 10-24, Ex. I, doc. p. 30). Because Rogers raised the standard for sufficiency of the evidence that is also applied in federal cases, *see Jackson v. Virginia*, 443 U.S. 307, 324 (1979), this Court assumes that Rogers exhausted a federal constitutional claim in state court.[6]

Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Id.* at 324 n.16. "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990), . . . the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson*, 443 U.S. at 326." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). If the record contains facts supporting

---

[6] When state and federal courts utilize the same standard, it may be possible to exhaust a federal claim in state court by raising an identical state claim. *See Mulnix v. Sec'y, Dep't of Corr.*, 254 Fed. App'x 763, 764-65 (11th Cir. 2007). Following *Mulnix*, the Eleventh Circuit Court of Appeals in a published opinion expressed doubt that a petitioner can exhaust a federal sufficiency of the evidence claim in this manner, but did not decide this issue. *See Preston v. Sec'y, Fla. Dep t of Corr.*, 785 F.3d 449, 459-60 (11th Cir. 2015).

conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Id.* Accordingly, a federal court must defer to the judgment of the jury in assigning credibility to witnesses and weighing the evidence. *Id.* The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jackson*, 443 U.S. at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (emphasis in original).

In affirming Rogers's convictions, the state appellate court determined that, "[a]lthough the State's evidence was certainly not overwhelming, we conclude that it was sufficient to survive Rogers' motion for judgment of acquittal." *Rogers*, 96 So.3d at 923. Rogers has not shown that the state appellate court's ruling was unreasonable.

The elements of possession of child pornography in Rogers's case were that (1) Rogers "knowingly possessed" an image; (2) the image " included in whole or in part sexual conduct by a child less than 18 years of age"; and (3) Rogers knew that the image "included sexual conduct by a child less than 18 years of age." (Doc. 10-11, Ex. C cont'd, transcript p. 392).

Because there was no dispute that the images were child pornography, the question was whether Rogers knowingly possessed those images. In Florida, possession may be constructive. "Constructive possession exists when a defendant does not have actual, physical possession of the [item], but knows of its presence on or about the premises, and has the ability to exercise and maintain control over the contraband." *State v. Odom*, 56 So.3d 46, 50 (Fla. 5th DCA 2011) (citing *Harris v. State*, 954 So.2d 1260, 1262 (Fla. 5th

DCA 2007)).[7]  The State presented evidence that the disk was located either in Rogers's closet or laptop bag and that Rogers admitted accidentally downloading child pornography and transferring pornography to disks.  (Doc. 10-8, Ex. C, transcript pp. 187-88; Doc. 10-13, Ex. E, doc. pp. 38-40).  Accordingly, the State presented sufficient evidence of constructive possession of child pornography.  *See, e.g., Knight v. State*, 186 So.3d 1005, 1012 (Fla. 2016) (the prosecution demonstrated that defendant had dominion and control over contraband by presenting evidence that the defendant owned the suitcase it was found in); *State v. Becker*, 559 So.2d 704, 704-05 (Fla. 4th DCA 1990) (sufficient evidence of constructive possession when contraband was found in defendant's closet in his room, even when others had access to the room).

The State also presented sufficient evidence that the possession was knowing.  The evidence showed that Rogers knew he had downloaded child pornography on occasion onto his computer (although he claimed it was accidental), that he moved items from his computer to disks, and that he stated that he should have thrown the disk away when Schlaegel confronted him.  (Doc. 10-13, Ex. E, doc. pp. 38-40).  Rogers fails to show that no rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt when viewing this evidence in the light most favorable to the prosecution. Accordingly, he has not shown that the state court's denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination.  Ground Three does not warrant relief.

Ground Four

---

[7] Constructive possession has been applied to child pornography cases.  *See Bussell v. State*, 66 So.3d 1059, 1062 (Fla. 1st DCA 2011).

Rogers argues that trial counsel was ineffective in developing a defense that was based on a misunderstanding of the law and a failure to investigate. When counsel remarked in opening statements that it would be the jury's decision "who had possession" of child pornography during the time frame alleged in the charging document, the prosecutor objected:

[COUNSEL]: [ ] So when it comes time to deliberate, you[r] decision will have to be who had possession because that's the issue. Who had possession during the time frame alleged in the petition, the information that was filed by the state attorney. They have to prove beyond and to the exclusion of a reasonable doubt that it wasn't [sic] Mr. Rogers.

[PROSECUTOR]: Judge, I object. That's a misstatement of the law.

[COUNSEL]: I don't think so, Judge.

[PROSECUTOR]: The date is not an element of the offense. The State doesn't have to prove the date of the offense.

(Doc. 10-8, Ex. C, transcript. pp. 143-44).[8]

Rogers asserts that this proves counsel's lack of understanding. Rogers also alleges that counsel was ineffective because, rather than obtain a clear jury instruction on possession, he allowed the jury to infer the meaning of possession.[9]

The state court denied Rogers's ineffective assistance claims:

There was no misunderstanding of the law by Defendant's trial counsel. The Information alleged that the Defendant unlawfully and "knowingly possessed" child pornography in the State of Florida on or about June 1, 2007, through December 28, 2007.

(Doc. 10-28, Ex. AA, doc. p. 5). The state court summarized the proceedings and

---

[8] The court took the objection under advisement, and later determined that, based on Florida case law, "there may be a variance between the dates proved at trial and those alleged in the indictment or information." (Doc. 10-8, Ex. C, transcript pp. 150-55).

[9] Rogers's claims that counsel inaccurately told the jury that he would testify, and that counsel coerced him not to testify, are addressed in Ground Seven, *infra*.

continued:

> The State later conceded during trial argument, during [the] State's closing argument, and during post-conviction evidentiary hearing argument that the defense argument on the law related to the time period in the Information was not improper argument and was jurisdictionally relevant. The time period in the Information was also argued as relevant by the State. While the exact date was not an "element" of the crime, in this instance the time frame was a proper consideration and legal argument. In order for the State of Florida to prosecute the crime(s) in Hernando County, Florida, and for the Court to have subject matter jurisdiction to hear the matter, the crime would have had to occurred during the time period within which the alleged "knowing possession" by the Defendant was in Hernando County, Florida. This was alleged to be between June 1, 2007, and December 28, 2007. The State conceded jurisdiction was not obtained until she (Catherine Schlaegel) came here (to Florida). This was also consistent with the testimony of the Defendant and [counsel] at the post-conviction evidentiary hearing. The then presiding trial judge also seemingly believed the temporal issue between June 1, 2007, to December 28, 2007, also had something to do with a statute of limitations issue relative to the date of filing of the Information, which was inconsequential. In actuality, it was a simple jurisdictional issue put forth by the defense.

> As an aside, the State even requested a special jury instruction to include and define "constructive" possession because the standard jury instruction for the child pornography offenses charged only sets forth "knowingly possessed" without further definition of "possession", which differs from jury instructions on drug possession charges. Defense counsel opposed the request and did not want to have a "constructive" possession jury instruction. The obvious import of this was to strengthen Defendant's "no knowing possession" argument, i.e., that he thought he had gotten rid of the CD or that she exclusively possessed it, rather than allowing an implication and inference by the jury of possession by the Defendant by virtue of being located in his closet over which it could be argued that he had dominion and control. In other words, leaving the jury to surmise that "actual" knowing possession was required and using the standard Florida Supreme Court jury instruction was more beneficial to the Defendant than specifically informing the jury that an implied, inferred, and constructive possession was also allowable. The Court inquired of counsel and the Defendant on this issue who indicated his understanding and agreed. The State's request was denied.

(Doc. 10-28, Ex. AA, doc. pp. 7-8) (court's record citations omitted).

The record supports the denial of this claim. Counsel's testimony reflects that he

was not mistaken about the elements the State had to prove. (Doc. 10-27, Ex. Z, doc. pp. 154-55, 157). Rather, counsel explained, he presented a jurisdictional argument, contending that Rogers did not knowingly possess the child pornography upon moving to Hernando County but that Schlaegel did knowingly possess it during the relevant time. (*Id.*, doc. p. 147).

As addressed in Ground Three, *supra*, the State had to show that Rogers knowingly possessed child pornography. Since the images constituted child pornography,[10] counsel did not act unreasonably in arguing that the State failed to prove Rogers's knowing possession during the time frame when he could have been charged in Hernando County. And, as the state court found, counsel did not erroneously tell the jury that possession was a factual matter for their determination. Accordingly, the state court did not unreasonably deny this aspect of Rogers's ineffective assistance claim.[11]

Nor did the state court unreasonably find that Rogers failed to show ineffective assistance concerning the jury instruction on possession. The standard jury instruction for possession of child pornography in effect at the time did not define "possession". *See* Fla. Std. Jury Inst. (Crim.) 16.11 (2008); *In re Standard Jury Instructions in Criminal*

---

[10] In his evidentiary hearing testimony, Rogers conceded that the images appeared to show child pornography. (Doc. 10-27, Ex. Z, doc. pp. 132-33).

[11] In his memorandum, Rogers claims that he is entitled to relief under *United States v. Cronic*, 466 U.S. 648 (1984) because counsel's alleged misunderstanding resulted in a failure to submit the State's case to adversarial testing. *See id.* at 659 (holding that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable" and no specific showing of prejudice is required). *Cronic* is inapplicable. Counsel made opening and closing arguments, cross-examined witnesses, challenged the States' proposed jury instructions, moved for a judgment of acquittal, and made objections during the trial. *See, e.g., Castillo v. Fla., Sec'y of DOC*, 722 F.3d 1281, 1287 (11th Cir. 2013) (explaining that *Cronic* requires a complete failure to test the case throughout the entire proceeding, not just at certain points in the proceeding).

*Cases–Report No. 2007-08*, 995 So.2d 489 (Fla. 2008). The State requested that the trial court give a special instruction defining possession. (Doc. 10-9, Ex. C cont'd, transcript pp. 233-34). After counsel expressed his disagreement, Rogers confirmed with the court that he did not want the special instruction. Rogers told the court that he understood the issue and had discussed it with counsel, and that he voluntarily chose not to seek a special instruction defining possession. (*Id.*, transcript pp. 235-40).

The state court did not unreasonably find that the standard instruction provided to the jury may have actually helped Rogers by not explicitly informing the jury that "constructive" possession was another means through which they could convict Rogers. Accordingly, Rogers has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Four.

Ground Five

Rogers asserts that trial counsel was ineffective in failing to object to the introduction of his recorded conversation with Schlaegel. He contends that the "entire audio constituted either hearsay or irrelevant material" and contained "highly prejudicial evidence." (Doc. 1, p. 12). Rogers argues that an objection would have been granted because the recording lacked probative value. He asserts that the recording "allowed the jury to convict the Petitioner solely because of 'propensity' reasons" and that there is a reasonable probability of a different outcome but for counsel's deficient performance. (Doc. 2, p. 29).

In his postconviction motion, Rogers argued that counsel's failure to object "allowed the jury to hear that the Defendant has had a history with pornography, and a prior addiction to drugs." (Doc. 10-26, Ex. N, doc. p. 10). The state court denied his ineffective

assistance claim:

> The Defendant's claim identifies the Defendant's admission to a history with pornography, as prejudicial. As the State points out, part of the defense's case was that the Defendant possessed lawful pornography. Additionally, the defense conceded that the Defendant and Schlaegel had prior discussions about the Defendant's viewing and possession of pornography. The defense also told the jury that the Defendant would say that there is pornography on the CD, but that he did not know "all this stuff was on it." Part of the defense's case was that the Defendant possessed pornography, but only legal material; any illegal, child pornography, if possessed by the Defendant was unknowing. Additionally, the court points out that the Defendant's interest in legal, adult pornography, was never an issue in this case.

> Because the evidence of "collateral crimes" in which the Defendant complains of, includes information that the defense had already admitted to the jury and was consistent with the case put on by the defense, the Defendant cannot now argue that the presentation of the audio, which recites these facts, was highly prejudicial. Accordingly, the court finds that the Defendant has failed to establish that counsel's failure to object or move to exclude evidence of the Defendant's history with pornography, amounts to deficient performance under *Strickland*.

> As to the statement made by the Defendant about a prior drug addiction, the State points out that the no [sic] reference to illegal drug use was made, that would prompt a collateral crimes evidence analysis. Outside of what was contained in the audio, the State did not make reference to any alleged drug abuse on behalf of the Defendant, in their case in chief, and Schlaegel was not questioned on the same. Therefore, the court finds that this information was not prejudicial and counsel was not deficient in failing to exclude this.

(Doc. 10-26, Ex. O, doc. pp. 30-31).

Rogers does not establish that the state court unreasonably denied his claim. He argued that counsel should have objected because of references to his general "history" with pornography. But, as the state court pointed out, the defense had already admitted that Rogers possessed adult pornography. Accordingly, Rogers does not show that counsel was ineffective in failing to seek exclusion of the audio because it addressed his general past interest in pornography. Nor does Rogers establish that counsel was

ineffective in not moving to exclude the audio based on the reference to his prior drug use. At the end of their conversation, Rogers briefly referenced a past drug addiction but indicated that he no longer used drugs.[12] In light of the isolated nature of these comments, Rogers does not show that his counsel performed deficiently in not seeking to exclude the recording or that he was prejudiced by counsel's performance. Rogers does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

Rogers now contends that counsel should have moved to suppress the recording because of other information it contained, including Schlaegel's suggestion that Rogers may pose a danger to their daughter if he obtained custody; Schlaegel's comments

---

[12] The relevant portion of the transcript provides:

CATHERINE SCHLAEGEL: So you're fixed?

JOE ROGERS: I don't have those problems anymore.

CATHERINE SCHLAEGEL: Okay. So you're telling me you're 100 percent fixed.

JOE ROGERS: No, you can't ever be 100 percent fixed. I'm telling you it's not an issue.

CATHERINE SCHLAEGEL: Okay. Well, alcoholics, they always keep up some therapy of some sort. They go to meetings to keep up so they won't backslide. Okay?

That's my problem. You have an addiction. Okay? But you want to think that you're fixed.

JOE ROGERS: I used to have a drug addiction, too.

CATHERINE SCHLAEGEL: I know. Okay? I didn't know about that shit either.

JOE ROGERS: Well, do you see me doing drugs?

CATHERINE SCHLAEGEL: I don't know, Joe. I'm not around. Okay?

JOE ROGERS: Okay. I'm - - I'm - -

(Conclusion of audio CD).

(Doc. 10-14, Ex. E cont'd, doc. pp. 27-28).

"stat[ing] as a fact that Mr. Rogers brought child pornography into the house and had it in his possession" and relaying a therapist's reaction to the child pornography; Schlaegel's comments about Rogers's alleged interest in teens; and Rogers's admission that he had been "addicted" to pornography. (Doc. 1, p. 14).

This portion of Rogers's ineffective assistance of trial counsel claim is unexhausted because he did not raise it in state court. (Doc. 10-26, Ex. N, doc. pp. 8-10). In his reply, Rogers concedes the resulting procedural default but contends that *Martinez* allows him to meet the cause and prejudice exception. Under *Martinez*, the petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that it has some merit." 566 U.S. at 14. A claim that does not have any merit or that is wholly without factual support is not substantial. *See id.* at 15-16. *See also Allen v. Sec'y, Dep't of Corr.*, ___ Fed. App'x ___, 2019 WL 1483791 at *3 (11th Cir. Apr. 3, 2019) ("[T]o show that an underlying claim is substantial, the petitioner must show that reasonable jurists would debate its merits." (citing *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014))).

Rogers fails to show that the defaulted claim of ineffective assistance is substantial. Initially, Rogers fails to demonstrate that the recording would have been inadmissible. He presents conclusory claims that the recording contained hearsay and was more prejudicial than probative. But he does not demonstrate that a motion to suppress would have been granted under Florida evidentiary law or under Florida or Federal constitutional law. As Rogers has not sufficiently alleged how he was prejudiced by counsel's performance, his claim is not substantial. *See Hittson*, 759 F.3d at 1271 ("Because Hittson has not alleged any facts to warrant a finding of *Strickland* prejudice, his . . . claim is not 'substantial'" under

*Martinez*).  *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (a petitioner's vague and conclusory statements, unsupported by specific facts, cannot sustain an ineffective assistance of counsel claim).

Moreover, Rogers has not demonstrated that counsel's decision not to object was unreasonable.  Catherine Schlaegel's testimony was critical to the State's case because she was the only witness who linked Rogers to the disk.  Therefore, counsel tried to discredit Schlaegel.  Counsel did so largely by asserting that Schlaegel's recorded statements showed her motive and bias.  Counsel argued that Schlaegel kept the disk until it worked to her advantage to use it against Rogers during the custody dispute–and that, consequently, the jury should not consider her credible:

> When you listen, and you can listen to the audio in the jury room, but if you can recall what the audio said, I don't recall how many times she said on the audio, are you going to take my child from me, are you going to take my child from me, are you going to take my child from me.  She said that enough times to draw attention to what her purpose was, what her plan was.  She wasn't going to let Joe Rogers take her child away.  There ain't no way in the world that's going to happen.
>
> So guess what she had.  She had found all this pornography, threw it away, threw it away, threw it away, the legal stuff, threw it away, threw it away, tons of stuff.  And then she said oh, I'm going to keep this, she kept it, because I'm going to need it.  And she kept it because she knew she could use it.  This is an act of revenge. This is a custody case.  Not a criminal case.  She took it.  She was going to hurt him as much as she could to prevent him from taking her child.
>
> Now, that act occurred out of malice, and it's been manifested over the last year in this ongoing custody action.  This action is taking place and there's been an awful lot that's gone on, as she testified to.  And you can hear the anger in the audio.  She brought out everything she possibly could bad about Mr. Rogers on that audio.  She took that golden opportunity because she knew she had already talked to the detective.  Go with a wire.  Get the statements.  You can hear the anger seething.  You are not going to take my child away.  She's going to make sure of that.
> . . .

Why didn't she keep the others?  She kept this one for a purpose just in case someone tried to take her daughter.

Do we believe her and everything that she says when we know she has a malicious intent, a malicious motive?  The jury instructions are going to ask you, well, does this person have an interest in the outcome of the case.  It's No. 4, weighing the evidence.  Did the witness have an interest in how the case should be decided?  Heck yeah.  No doubt about that whatsoever.  You are going to take my child.  And you can hear it in her voice.

So what do we do?  We take the CD and give it to the law enforcement officers because it's time.  I don't want to lose my child.  It didn't bother her for 22, 23 months, didn't bother her during the time she was with him in Tennessee.  (Unintelligible) in Florida when she tried to kill herself because she wasn't managing her medication right.

(Doc. 10-11, Ex. C cont'd, transcript pp. 379-80, 383-84).[13]

In addition, the recording contained Rogers's denials that he purposefully downloaded or possessed child pornography.  He told Schlaegel that, "in the thousands of stuff that I downloaded, [child pornography] showed up every now and then.  It was a random occurrence. I didn't seek that out specifically."  (Doc. 10-13, Ex. E, doc. p. 39).  He stated that he "didn't even think" child pornography would be on the disk.  (*Id.*).  He "sw[ore]" to Schlaegel that he did not know the images contained child pornography when he downloaded them, and told her that he "did not have that obsession" and that he "was appalled."  (*Id.*, doc. pp. 42, 44).

Further, Rogers explained to Schlaegel how he believed he accidentally downloaded child pornography and unknowingly transferred it to disk.  He told her that he downloaded images through file sharing services, where others would manipulate file names "to get

---

[13] In addition, the Court notes counsel's evidentiary hearing testimony that "it was easy to blame it on" Schlaegel because she was "very vindictive and very nasty" and "was the one who would do it to him."  (Doc. 10-27, Ex. Z, doc. p. 144).

people to find their stuff." (*Id.*, doc. p. 44). Rogers also said that "all I was doing was taking stuff off the hard drive and copying it wholesale over to the disk. I never even saw what was on the disk." (*Id.*, doc. p. 39). He explained, "You click on one file, you hold control/shift, you click on the file at the bottom and you move it over to the CD and it copies it. You never see what's on there. I can show you right now if you want to see it. You do not see what's being copied over." (*Id.*, doc. pp. 42-43).

Therefore, the recording allowed the defense to place Rogers's version of events before the jury, in his own words, without exposing him to the risks of cross-examination.[14] And in his closing argument, counsel emphasized the portions of the recording that involved Rogers's theory:

> The audio, Joe Rogers said on the audio repeatedly, I got rid of it, I got rid of it. If there is anything, it was accidental. I got rid of it.
> . . .
>
> [Y]ou heard an hour and a half of audio where he says I thought I got rid of it, I wanted to reconcile, I wanted to make this family work, I wanted to be with you, I got rid of it.
>
> Is that knowing possession when his intent was to dispossess himself from all of this to make sure he had a family, make sure he had his daughter? Can they prove beyond and to the exclusion of a reasonable doubt that he knowingly possessed it under the circumstances?
> . . .
>
> Also, this particular CD nobody ever (unintelligible), nobody ever asked him did he do it. She didn't. All she did - - if you want you can listen to that audio again, she never says I have a CD and you made it. He never said, yes, no or maybe because it never happened. But she got him to say, oh, yeah, I downloaded it, and he did, but he said he got rid of it.
>
> But he never, ever, ever was confronted with this CD. Never. He never admitted ever having this CD. Never. He never admitted ever having this

---

[14] As addressed in Ground Seven, *infra*, counsel testified to his concerns with calling Rogers at trial.

CD because, as he said on the audio, I got rid of it.  He was dispossessed. He no longer possessed it because of the counseling, because of the relationship, because of his daughter.

(Doc. 10-11, Ex. C cont'd, transcript pp. 380, 382, 385).

In sum, the recording offered a way to attack Schlaegel's credibility and present the jury with Rogers's denials and his explanation of what happened while avoiding the pitfalls of testifying. Therefore, while the disk contained some unfavorable information, Rogers has not established that counsel's approach fell outside of the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Rogers fails to show that his defaulted claim of ineffective assistance of trial counsel is substantial under *Martinez*.  The cause and prejudice exception, therefore, does not apply to overcome the default of his claim.  Rogers does not argue or demonstrate that the fundamental miscarriage of justice exception applies.  Consequently, the claim is barred from review.  Rogers is not entitled to relief on Ground Five.

Ground Six

Rogers claims that counsel was ineffective in failing to retain an expert to analyze the disk's authenticity.  He claims that counsel "took no actions to attempt to investigate whether or not the disk ever belonged to the Petitioner, to determine whether the CD was fabricated or to even determine whether the CD actually contained child pornography." (Doc. 1, p. 16).

The state court denied this claim after an evidentiary hearing.  The court discussed evidence indicating that Rogers knew about the child pornography, including his statements to Schlaegel and admissions to counsel.  The court then found:

[Counsel] testified that the Defendant had let the "cat out of the bag" and

there was no reason to hire an expert to testify that the Defendant had not done something to which he had already made inculpatory admissions to. [Counsel] testified that this issue had been discussed with the Defendant as well.

[Counsel] reviewed the CD with the Assistant State Attorney. It undoubtedly contained child pornography. The Defendant had admitted to [counsel] that he possessed the child pornography. Defendant was in fact able to identify his writing on at least 3 of the CDs during an attempted plea colloquy. . . . In addition, the Defendant abandoned any "fabrication" defense issues at the IAC evidentiary hearing stating that he was satisfied at that time that the CD had not been fabricated. The Defendant testified that he believed that Catherine Schlaegel did not fabricate the disc and confirmed that he created the CD, corroborating his prior admissions. The Defendant further declined to pursue the fabrication issue after having been given opportunity to do so following the evidentiary hearing of August 13, 2015. Therefore, there is no prejudice.

[Counsel] testified that . . . the possible defense with expert testimony of fabrication of the CD would not be beneficial as a result of the Defendant's inculpatory admissions to law enforcement and to Catherine Schlaegel. To have hired an expert would have been inconsistent and futile based upon the Defendant's actions.

Consistent with the principles governing the standard for determining ineffectiveness of an attorney's representations, circumstances giving rise to ineffective assistance of counsel may not be found in defense counsel's failure to seek to introduce evidence of a meritless defense at the guilt phase of a trial. 14 Fla. Jur. 2d Criminal Law § 496 (2015); Evans v. State, 946 So.2d 1 (Fla. 2006). For purposes of a claim of ineffective assistance, trial counsel is granted great latitude in decisions regarding use of expert witnesses. 14 Fla. Jur. 2d Criminal Law § 496 (2015); Franqui v. State, 965 So.2d 22 (Fla. 2007).

(Doc. 10-29, Ex. AA, doc. pp. 18-19) (court's record citations omitted).

As the state court noted, counsel testified that he decided not to use an expert because he thought Rogers had damaged his defense by admitting that child pornography had been copied onto disks. (Doc. 10-27, Ex. Z, doc. pp. 145-46). Accordingly, counsel believed that an expert "would not have done anything" towards establishing that the disk was not authentic. (*Id*.). Further, counsel could only speculate that Schlaegel actually

made the disk in attempt to frame Rogers, or that the disk had otherwise been tampered with. Under these circumstances, counsel's decision to forgo hiring an expert was not unreasonable. *See Tejada*, 941 F.2d at 1559. Moreover, Rogers agreed that after his postconviction counsel reviewed the disk, he was satisfied that Schlaegel did not make it. (*Id.*, doc. pp. 119-20).

Rogers has not shown that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact. He is not entitled to relief on Ground Six.

Ground Seven

Rogers argues that trial counsel was ineffective because counsel failed to allow Rogers to testify. On the last day of trial, Rogers initially told the court he intended to testify, but, after the lunch break, said that he had changed his mind and no longer wished to testify. Rogers now claims that counsel coerced him into not testifying, and that counsel "instead lied to the jury." (Doc. 1, p. 18). The state court denied this claim after an evidentiary hearing:

> Regarding the Defendant's decision ultimately not to testify, see the two (2) colloquies between the Court and the Defendant concerning his initial decision to testify as indicated on the record before the lunch recess and his decision ultimately not to testify after the lunch recess.
>
> Also, [counsel] testified that the Defendant had given a statement to law enforcement volunteering child pornography sites to shut down. The Defendant denied he had volunteered child pornography sites to law enforcement stating he only agreed to backtrack on the other pornography he had downloaded to attempt to assist law enforcement to find the child pornography sites. This evidence was not used during the State's case in chief at trial, but was a concern of defense trial counsel. In addition, a conversation between the Defendant was recorded by Catherine Schlaegel at the suggestion of law enforcement, it was admitted into evidence at trial, and was played to the jury. The statement to law enforcement and recorded

statement were both received by [counsel] as reciprocal discovery. Having testified to receipt thereof through reciprocal discovery from the State, the Court finds [counsel's] testimony that he had this evidentiary information about child porn sites volunteered to law enforcement by the Defendant to be credible.

The Defendant was told by [counsel] not to talk to anyone about the case up to possibly three (3) times. The Defendant acknowledged he had by told by [counsel] not to talk to anyone. The Defendant did both, spoke [sic] with law enforcement and Catherine Schlaegel, against the advice of his trial counsel. The digital recording of the Defendant with Catherine Schlaegel contained multiple inculpatory admissions. Trial counsel felt that [the] State's case could only get better if the Defendant testified and the Defendant's case could only get worse because he would be subject to cross-examination on these matters as well as the statement to law enforcement depending upon his testimony. Under the circumstances, the Court finds this to have been a reasonable trial strategy at the time. The issue was weighed and considered by the Defendant, the Court inquired of the Defendant, and the Defendant understood and agreed that not testifying had been his own decision. Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct. Occhicone v. State, 768 So.2d 1037 (Fla. 2000). Further, the Defendant asserts that if he had testified he could have given "context" to his recorded admissions to Catherine Schlaegel and to testimony by Detective Cornell. A defendant asserting an incompetent counsel claim does not satisfy his burden under the second, prejudice, prong of *Strickland* merely by showing that his counsel's errors "had some conceivable effect on the outcome of the proceeding." Strickland and 22 Fla. Prac., Criminal Practice and Procedure § 8:14 (2015 ed.). Any advice not to testify was reasonable under the circumstances, Defendant's testimony would have had a speculative effect not having a reasonable probability of affecting the outcome of the trial, and not testifying was Defendant's own decision.

(Doc. 10-28, doc. pp. 14-16) (court's record citations omitted).

A criminal defendant has a fundamental constitutional right to testify at trial. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992). *See also Gallego v. United States*, 174

F.3d 1196, 1197 (11th Cir. 1999) (holding that ineffective assistance occurs when (1) counsel refuses to honor a defendant's decision to testify or (2) counsel fails to inform a defendant that he has a right to testify and that the final decision whether to testify is the defendant's alone). "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." *Teague*, 953 F.2d at 1534.

Rogers does not show that the state court's ruling was unreasonable. At the evidentiary hearing, Rogers stated that he wanted to testify at trial to put the recorded conversation into context. (Doc. 10-27, Ex. Z, doc. pp. 107-08). He explained that he wanted to tell the jury that he did not correct Schlaegel's alleged misstatements during the course of the recorded conversation because they had already discussed those matters many times. (*Id.*, doc. pp. 106-08). Rogers also testified that he would have denied downloading child pornography or seeing a counselor about any type of pornography addiction, including a child pornography addiction. (*Id.*, doc. pp. 109, 111).

Counsel told the court that he advised Rogers not to testify. Counsel stated that he was confident the State had not met its burden to show possession. (*Id.*, doc. p. 166). Counsel testified that he explained to Rogers that he believed testifying would be harmful because Rogers may make made inconsistent statements or try to "explain things." (*Id.*, p. 165). And counsel told Rogers that if he took the stand, he would likely be cross-examined about his statements to Schlaegel as well as a phone call to law enforcement in which Rogers allegedly shared knowledge of child pornography websites. (*Id.*, doc. pp. 148-49).

The state court's finding that counsel made a strategic choice in advising Rogers not to testify is a finding of fact. *DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact."). This factual finding is entitled to a presumption of correctness, which can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Rogers has not rebutted the presumption.

Rogers has not demonstrated that counsel acted unreasonably in advising him not to testify. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.") (quotation omitted). Counsel was apprehensive about what information Rogers might testify to, and worried that Rogers's cross-examination would be damaging. Moreover, counsel believed that Rogers's testimony was not necessary because the State had failed to prove its burden of showing his knowing possession beyond a reasonable doubt. Under these circumstances, counsel's advice was not unreasonable. *See, e.g., Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005) (counsel's tactical advice not to testify "because of the dangerous cross-examination that could ensue" was not "a sound basis for a claim of ineffective assistance of counsel."); *Teague*, 953 F.2d at 1533 n.9 ("There are good tactical reasons why it may not be best for the defendant to testify in some circumstances. Some examples might be if the defendant might provide evidence of missing elements of the crime on cross-examination . . . or if the prosecutor might impeach the defendant using a prior inconsistent statement.").

Nor does Rogers show that counsel coerced him into remaining silent when counsel

advised him not to testify.  As the state court noted, the record demonstrates that Rogers voluntarily waived his right to testify after conferring with counsel.  (*See* Doc. 10-11, Ex. C cont'd, transcript pp. 360-62).  Rogers told the trial court that no one forced him, threatened him, or coerced him into deciding not to testify, and that he was satisfied with counsel's advice.  (*Id.*, transcript pp. 361-62).  And, Rogers testified at the evidentiary hearing that he was confident in his choice not to testify based on counsel's advice.  (Doc. 10-27, Ex. Z, doc. p. 135).  Rogers has not shown that the state court erred in finding that counsel reasonably advised him not to testify or in finding that Rogers made the decision not to testify on his own.

Further, Rogers has not established that counsel lied to the jury when he remarked during opening statements that Rogers would testify to a different version of events than Schlaegel.  (Doc. 10-8, Ex. C, transcript p. 142).  The purpose of opening statements is to set out what the attorneys believe the trial evidence will show.  *See United States v. Lizon-Barias*, 252 Fed. App'x 976, 978 (11th Cir. 2007) ("An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow.").  There is no indication that counsel did not actually expect Rogers to testify at the time counsel made his opening statement.  Counsel's evidentiary hearing testimony indicates that, after the State rested, he advised Rogers not to testify because he did not think the State had proven possession, but that he did think the State could help its case when it cross-examined Rogers.  Thus, it appears that counsel simply gave Rogers different advice based on his assessment of the State's evidence.

Rogers has not established that the state court's order involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination.  Rogers

is not entitled to relief on Ground Seven.

Ground Eight

Rogers alleges that the trial court violated his constitutional rights in imposing "a vindictive and unreasonable sentence." (Doc. 1, p. 20). He argues that his sentence is vindictive because the trial court imposed a lengthier sentence than that discussed in plea negotiations to punish Rogers for exercising his right to proceed to trial.

Respondent contends that, despite Rogers's citations to both federal and state law in his federal habeas petition, Rogers's allegation of vindictive sentencing is essentially a state law claim. As Respondent indicates, Rogers relies on Florida decisions regarding vindictive sentencing. In his reply, Rogers does not contest the State's characterization of his vindictive sentencing claim as a state law matter. Respondent correctly asserts that Rogers's state law claim is not cognizable in this federal habeas proceeding. *See* 28 U.S.C. § 2254(a); *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

To the extent Rogers's vindictive sentence claim may nevertheless raise a federal violation, it is unexhausted. Rogers's postconviction claim of vindictive sentencing did not clearly allege that the court imposed a vindictive sentence in violation of his federal rights. (Doc. 10-26, Ex. N, cont'd, doc. pp. 14-17).[15] *See Pearson v. Sec'y, Dep't of Corr.*, 273

---

[15] Rogers's quotation of a Florida decision stating that the fear of retribution in sentencing may not be used to dissuade the defendant from exercising his Fifth Amendment privilege against self-incrimination or his Sixth Amendment right to proceed to a trial was insufficient to allege that the trial court violated Rogers's federal constitutional rights in sentencing him. (Doc. 10-26, Ex. N cont'd, doc. p. 14).

Fed. App'x 847, 849-50 (11th Cir. 2008) ("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.").  As Rogers cannot return to state court to present a federal claim in either a second appeal or a second postconviction motion, the claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  While Rogers mentions *Martinez* in his reply, as addressed, *Martinez* only applies to excuse a defaulted claim of ineffective assistance of trial counsel.  Accordingly, Rogers's vindictive sentencing claim is barred from review.

However, Rogers also appears to bring a distinguishable claim, which he raised on direct appeal, that his sentence is cruel and unusual in violation of the Eighth Amendment because it is grossly disproportionate to his crimes.  (*See* Doc. 2, p. 34).  The state appellate court denied his claim:

> Rogers received a composite sentence of seventy-five years in prison.  Given that the 125 child pornographic images were on a single CD-ROM and given that Rogers had no prior felony convictions, one might well conclude that the sentence was unduly harsh.  However, we cannot accept Rogers' argument that his sentence violates the cruel and unusual punishment clauses of the United States and Florida constitutions.  *See, e.g., Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (upholding sentence of twenty-five years to life for theft of golf clubs under California's "Three Strikes and You're Out" law); *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (imposition of life imprisonment sentence for trafficking in cocaine did not constitute cruel and unusual punishment notwithstanding defendant's lack of prior felony convictions); *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (sentence of two consecutive terms of twenty years' imprisonment for possession with intent to distribute nine ounces of marijuana and distribution of marijuana was constitutional); *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed. 2d 383 (1980) (upholding imposition of mandatory life sentence under Texas recidivist statute where defendant's third felony conviction was for obtaining $120.75 by false pretenses).

*Rogers*, 96 So.3d at 923-24 (footnotes omitted).

The Eighth Amendment contains a "narrow proportionality principle" that "applies to noncapital sentences." *Ewing*, 538 U.S. at 20. "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59 (2010) (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)). Accordingly, the Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* at 60 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1000-1001 (1991)). In assessing proportionality, a court must compare the gravity of the offense and the severity of the sentence. *Id.*

The Supreme Court has approved criminalizing the possession of child pornography because of the gravity of this conduct. *See Osborne v. Ohio*, 495 U.S. 103, 110-11 (1990) ("Given the gravity of the State's interests" in preventing the use of children in pornography and protecting child victims, "we find that Ohio may constitutionally proscribe the possession and viewing of child pornography."). Rogers fails to show that his sentence, which was imposed upon his conviction for 125 crimes,[16] is grossly disproportionate to the crimes and thus violates the Eighth Amendment. Accordingly, Rogers cannot show that the state appellate court's denial of his claim is contrary to, or involves an unreasonable application of, clearly established federal law. Nor has he shown that the state court's decision was based on an unreasonable factual determination. Rogers is not entitled to relief on Ground Eight.

Ground Nine

---

[16] *See* § 827.071(5)(a), Fla. Stat. ("The possession . . . of *each* . . . [image of sexual conduct by a child] . . . is a *separate* offense.") (emphasis added).

Rogers contends that his judgment and sentence violate the Double Jeopardy clause of the Fifth Amendment because he was punished multiple times for the same offense. Specifically, he claims that counts two through fifteen of the charging document (for which charges he received prison sentences) are identical. (*See* Doc. 10-1, doc. pp. 6-9). Therefore, Rogers alleges, the charging document "failed to charge each count with the specificity necessary to prosecute, punish and sentence the Petitioner separately and consecutively." (Doc. 1, p. 22).

When Rogers raised this claim in a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a), the state court denied it:

> The Defendant's instant motion claims that his sentences in counts two (2) through fifteen (15) are illegal as violative of the constitutional protection against double jeopardy. Specifically, the Defendant argues that the information fails to charge each count with the specificity necessary to prosecute, punish and sentence the Defendant separately and consecutively.
>
> An illegal sentence is one that "imposes the kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of circumstances." *Carter v. State*, 786 So.2d 1173 (Fla. 2001) (quoting *Blakley v. State*, 746 So.2d 1182) (Fla. 4th DCA 1999)). A court may correct an illegal sentence, at any time, if the defendant affirmatively alleges that the record before the court, on its face, indicates that the defendant is entitled to such relief. Fla. R. Crim. P. 3.800(a). In order for a defendant's motion under Fla. R. Crim. P. 3.800(a) to be facially sufficient, the defendant must (1) allege that the error can be corrected from the face of the record, (2) identify where in the record the pertinent information can be found, and (3) explain how the record entitles the defendant to relief. *Daily v. State*, 750 So.2d 37 (Fla. 4th DCA 1999).
>
> The Defendant's claim of double jeopardy is not cognizable under Fla. R. Crim. P. 3.800(a). "A double jeopardy argument is a challenge to the judgment, not the sentence." *Smith v. State*, 886 So.2d 336, 337 (Fla. 5th DCA 2004). A double jeopardy challenge raises factual questions regarding the underlying conviction, which cannot be resolved from the face of the judgment. *Id.* Because of this, "Rule 3.800(a) does not provide an appropriate remedy." *Id.* Because the Defendant's claim is an attack on his conviction, the Defendant's argument is improper under Fla. R. Crim. P.

3.800(a).

(Doc. 10-29, Ex. NN, doc. pp. 76-77).

The state court resolved this claim by applying an independent and adequate state procedural ground. A motion filed under Rule 3.800(a) challenges the legality of the sentence on the face of the record. *See* Fla. R. Crim. P. 3.800(a) ("A court may at any time correct an illegal sentence imposed by it . . . when it is affirmatively alleged that the court records demonstrate on their face an entitlement to that relief.").

Accordingly, as the state court's order explained, Florida courts have held that a double jeopardy claim that challenges a defendant's conviction is not cognizable under Rule 3.800(a). *See Smith v. State*, 886 So.2d 336 (Fla. 5th DCA 2004); *Seward v. State*, 937 So.2d 767, 768 (Fla. 5th DCA 2006) (finding that a double jeopardy argument constituted an attack on the appellant's judgments of conviction and was therefore not cognizable in a Rule 3.800(a) motion); *Coughlin v. State*, 932 So.2d 1224, 1226 (Fla. 2d DCA 2006) ("Double jeopardy challenges to convictions are not cognizable under rule 3.800(a)."); *George v. State*, 213 So.3d 966, 967 (Fla. 1st DCA 2015) ("Double jeopardy challenges to a defendant's convictions are not cognizable in a rule 3.800(a) motion."). The state postconviction court expressly applied this rule, and the state appellate court approved of the result through its *per curiam* affirmance. (Doc. 10-29, Ex. PP). The state court's ruling on Rogers's federal claim therefore rested on an independent and adequate state procedural bar. *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

Rogers claims that the state court incorrectly applied its own rule, asserting that his claim was cognizable in his Rule 3.800(a) motion. *See, e.g., Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (a procedural default can occur "where the state court correctly

applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred."). But Florida law is clear that when a double jeopardy claim challenges the underlying conviction, as opposed to merely challenging the imposition of sentence, Rule 3.800(a) is not a proper means to bring the double jeopardy claim. In his Rule 3.800(a) motion, Rogers argued that the charging document was defective, thereby contending that it was not possible to determine whether there was an independent factual basis for each conviction. (Doc. 10-29, Ex. MM). As Rogers challenges the basis for each conviction, his claim implicates the validity of his judgments of guilt, not just the sentences he received. Accordingly, Rogers's claim is procedurally defaulted. *See Harris*, 489 U.S. at 262. *See also Bailey*, 172 F.3d at 1302 (a federal court is obligated to "respect the state court's decision" correctly applying an independent and adequate state procedural bar).

In his reply, Rogers cites *Martinez* and asserts that his postconviction counsel was ineffective in failing to "recognize the double jeopardy issue" and present it as one of ineffective assistance in his postconviction proceedings. (Doc. 15, p. 13). But the procedurally defaulted claim raised in Ground Nine of Rogers's federal habeas petition is a substantive double jeopardy challenge, not an ineffective assistance claim. (Doc. 1, p. 22; Doc. 2, p. 37). As addressed, *Martinez* does not apply to excuse the default of any type of claim other than ineffective assistance of trial counsel, which, again, Rogers did not raise in his habeas petition. To the extent he now attempts to raise a claim of ineffective assistance for the first time in his reply, Rogers is prohibited from doing so. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005).

Rogers does not establish cause and prejudice to excuse the default of his double jeopardy claim. He does not argue or establish that the fundamental miscarriage of justice exception applies. Consequently, Ground Nine is barred from review.

It is therefore **ORDERED** that Rogers's petition (Doc. 1) is **DENIED**. The Clerk is directed to enter judgment against Rogers and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is **ORDERED** that Rogers is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Rogers "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Rogers has not made the requisite showing. Finally, because Rogers is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on June 27, 2019.

*Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record